Mr. Justice Miller
delivered the opinion of the court.
The claim of the State of Virginia to dominion over that region of country called the territory northwest of the Ohio Eiver, which is now filled with a population of many millions and divided into five States of the Union, was not undisputed in the days when that State was a province of Great Britain. *70 The French had numerous settlements there, and the government of Great Britain claimed, both by the acquisition of Canada and by settlement, a large part of that loosely-defined country. They had their military posts there as well as peaceful villages. The Indians also denied all right of the Colony of Virginia to rule over them, and some of the most warlike tribes of that race were known to occupy, with claim of exclusive right, the largest part of the country.
During the revolutionary war General George Rogers Clarke, acting under a commission from the State of Virginia, fitted out a warlike expedition, and starting from the falls of the Ohio, now called Louisville, made his appearance suddenly before the military post of Kaskaskia, then held by the British, and captured it and several other posts, and in the course of one of the most romantic campaigns which tbe history of that region down to this day affords, effectually settled the right of Virginia to supremacy in that quarter.
General Clarke was not very vigorously supported by Virginia in this enterprise, for it occurred during the war of the Revolution, and that commonwealth, as she now called herself, was engaged in more pressing affairs. It seems, however, that the State had in New Orleans an agent on whom Clarke drew several drafts for funds to aid him in the matter, most of which were paid.
In the year 1778 he drew one of these drafts in favor of Francis Vigo for $8,616, which was not paid, for want of funds. This draft was given for supplies furnished to Clarke’s regiment, and has never yet been paid. It does not appear that the State of Virginia ever denied the justice of this debt, but by the finding of the Court of Claims, from which this record comes to us on appeal, it does appear that an officer of that State, called the commissioner of revolutionary claims, examined into this one in the year 1835 and adjusted it, including interest, at $32,654.85.
Iu the course of the negotiation for the relinquishment of title by the States to their outlying territories, one of the resolutions passed by the Continental Congress, October 16, 1780, 6 Journal of Congress, 213, was, that when so ceded, “ the necessary and reasonable expenses which any particular State shall have incurred since the commencement of the present war, in subduing any British post, or in maintaining forts or garrisons *71 within and for the defense, or in acquiring any part of the territory that may be ceded or relinquished to the United States, ■shall be re-imbursed.”
The debt represented by this draft comes directly within the language of this resolution, which was repeated by the Virginia legislature in the act of cession.
But by the Act August 5,1790, by which Congress constituted a board of commissioners to adjust all claims of the several States against the United States, there was a provision that no claim of a citizen of a State should be admitted as a claim against the United States which had not been allowed by the State before the 24th day of September, 1788. As the claim of Vigo on account of this draft had not then been allowed by the State of Virginia, this proviso has remained as a perpetual bar to its payment or allowance by those commissioners or by ■any other officer of the Government.
Congress, however, by many private acts has authorized the payment of other claims similarly barred. This claim has been constantly pressed upon the attention of Congress by the heirs of Vigo, until finally the case was, by the Act June 8,1872, referred to the Court of Claims, in the following language:
“ The claim of the heirs and legal representatives of Col. Francis Vigo, deceased, late of Terre Haute, Ind., for money and supplies furnished the troops under command of General George Rogers Clarke, in the year 1778, during the revolution^ ary war, be, and the same hereby is, referred, along with all the papers and official documents belonging thereto, to the Court of Claims, with full jurisdiction to adjust and settle the ■same; and in making such adjustment and settlement the said court shall be governed by the rules and regulations heretofore adopted by the United States in the settlement of like cases, giving proper consideration to official acts, if any have heretofore been had in connection with this claim, and without regard to the statutes of limitations.”
We entertain no doubt that the claim was a just claim in the hands of Vigo against the State of Virginia, and that, under the resolutions of the Congress of the United States and the State of Virginia, it belonged to that class of claims which Congress had assumed on receiving from that State the cession of the territory northwest of the Ohio. The wisdom of the act ■of Congress of 1790, in fixing a date after which the States *72 could not make allowances of claims which should bind the United States, is apparent; and nothing could be more just or honorable than that Congress, when appealed to for a relaxation of this salutary general rule of exclusion, in favor of the private citizen who had a meritorious case, should grant relief. It seems clear to us that in the act of 1872 Congress did mean to remove this bar of the lapse of time, and to authorize the Court of Claims, if they found the claim to be a just one, to settle and allow it.
That the allowance of the principal sum was right, we think beyond question, but the allowance of interest admits of discussion.
It has been the general rule of the officers of Government in adjusting and allowing unliquidated and disputed claims against the United States to refuse to give interest. That this rule is sometimes at variance with that which governs the acts of private citizens in a court of justice would not authorize us to depart from it in this case. The rule, however, is not uniform, and especially is it not so in regard to claims allowed by special acts of Congress, or referred by such acts to some Department or officer for settlement.
The very careful brief of counsel for claimant has with much labor collected numerous cases in which interest has been allowed by Congress in the adjustment of disputed claims. The fifth section of the act of August 5,1790, already referred to, directed the commissioners who under that act were to settle the claims of the States against the General Government to allow interest, and but for the bar of time in that act this case would have come under that statute. The act under which the Court, of Claims took jurisdiction of this case directed it to be “governed by the rules and regulations heretofore adopted by the United States in settlement of like cases.” This is a like case-to those in which interest was to be allowed by the act of 1790;.
The bill of exchange drawn by Clarke in favor of Vigo is an instrument which, by the commercial usage of all nations, bears interest after due. It also evidences the claim as a liquidated sum. There has never been any dispute about the amount, due if the claim was legal. And though the United States is not directly bound by the instrument, yet, if they choose to remove' the bar of time, as the act of 1872 does in express terms, and' it is found that the claim is one which the Government has by *73 law agreed to pay, we see no reason why it should not be paid in full, with all its legal incidents, as the State of Virginia should and would have paid it had not the liability been assumed by the United States when she received the cession of that immense country — a consideration ample enough for this and all other obligations she assumed in that contract.
The judgment of the Court of Claims is affirmed.